STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1451


THOMAS ALLEN

VERSUS

ALLSTATE INSURANCE COMPANY,
PATRICK BRUPBACHER,
DOUGLAS CHESSON AND WILLA CHESSON


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2005-5571- DIV. E
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy H. Ezell, and James T. Genovese, Judges.


AFFIRMED.


Blake R. David
Broussard & David, L.L.C.
600 Jefferson Street, Suite 700
Post Office Box 3524
Lafayette, Louisiana 70502-3524
(337) 233-2323
COUNSEL FOR PLAINTIFF/APPELLANT:
    Thomas Allen

**John W. Penny, Jr.**
**Penny & Hardy**
**600 Jefferson Street**
**Chase Tower, Suite 601**
**Post Office Box 2187**
**Lafayette, Louisiana 70502-2187**
**(337) 231-1955**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Allstate Insurance Company**

**Mark L. Riley**
**Onebane Law Firm**
**1200 Camellia Blvd., Suite 300**
**Post Office Drawer 3507**
**Lafayette, Louisiana 70502-3507**
**(337) 237-2660**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Halliburton Energy Services**

**David A. Hurlburt**
**Hurlburt, Privat, & Monrose**
**700 St. John Street, Suite 200**
**Post Office Drawer 4407**
**Lafayette, Louisiana 70570**
**(337) 237-0261**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**USAgencies Casualty Ins. Co.**

**Robert L. Ellender**
**Voorhies & Labbe**
**4th Floor, 700 St. John Street**
**Post Office Box 3527**
**Lafayette, Louisiana 70502-3527**
**(337) 232-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Patrick Brupbacher**

**Maurice L. Tynes**
**4839 Ihles Road**
**Lake Charles, Louisiana 70605**
**(337) 479-1173**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Douglas Chesson and Willa Chesson**

**GENOVESE, Judge.**

In this personal injury case, Plaintiff, Thomas Allen, appeals the trial court's grant of summary judgment in favor of Defendant, Allstate Insurance Company (Allstate), finding that no coverage exists for the alleged negligence of Defendant, Patrick Brupbacher, under the personal umbrella policy issued by Allstate to its named insureds, Defendants, Douglas[1] and Willa Chesson (the Chessons). For the following reasons, we affirm.

## FACTS

On November 3, 2004, Mr. Allen was involved in an automobile accident in Lafayette, Louisiana, with Mr. Brupbacher, the grandson of Allstate's named insureds, the Chessons. It is undisputed that at the time of the accident: a) Mr. Brupbacher was operating a 1999 Suburban with the permission of its owners, the Chessons; b) Allstate had issued to the Chessons both a primary automobile liability policy bearing policy number 91768237[2] and a personal umbrella policy bearing policy number 910768235 (the umbrella policy); and, c) Mr. Brupbacher was not residing with the Chessons at the time of the subject accident.

Mr. Allen filed suit against Mr. Brupacher, the Chessons, and Allstate for the personal injuries he allegedly sustained as a result of the subject accident. Allstate, in its capacity as the insurer under the umbrella policy, filed a Motion for Summary Judgment on the issue of insurance coverage. Allstate contended that there was no liability coverage under the umbrella policy for the actions of Mr. Brupbacher. Additionally, a Motion for Summary Judgment was filed on behalf of Willa Chesson, asserting that Mrs. Chesson did not negligently entrust the vehicle to Mr. Brupacher

---

[1]Douglas Chesson died after the institution of this litigation.

[2]Coverage under the primary automobile liability policy was conceded by Allstate.

and that he was not on a mission for her, thereby triggering vicarious liability. Following a hearing on both Motions for Summary Judgment, the trial court found that no coverage existed under the umbrella policy and that there was no liability, either directly or vicariously, on the part of the Mrs. Chesson. In accordance therewith, the trial court signed a judgment dismissing Allstate and the Chessons from this litigation. It is from this judgment that Mr. Allen appeals.

## ISSUES

Mr. Allen presents the following issues for our review:

1. whether the Allstate Insurance Company Umbrella Policy (No. 910768235) issued to Douglas and Will[a] Chesson covers Patrick Brupbacher (permissive user) while operating the "covered auto", 1999 G.M.C. Suburban, owned by the Chessons[; and]

2. whether the Allstate Insurance Company Umbrella Policy (No. 910768235) issued to Douglas and Will[a] Chesson covers Patrick Brupbacher while operating the "covered auto" on a paid mission for Douglas and Will[a] Chesson.

## LAW AND DISCUSSION

### *Standard of Review*

The governing jurisprudence relative to a motion for summary judgment and our appellate standard of review thereof have recently been reiterated by our supreme court as follows:

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363[,] p. 3 (La.11/29/06), 950 So.2d 544, 546, see [La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181[,] p. 17 (La.3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337[,] p. 7 (La.10/19/04), 885 So.2d 540, 545; *Jones v. Estate of*

2

> *Santiago*, 2003-1424[,] p. 5 (La.4/14/04), 870 So.2d 1002, 1006.

*Samaha v. Rau*, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83.

*Mayers v. Marmet*, 08-127, pp. 5-6 (La.App. 3 Cir. 5/28/08), 985 So.2d 315, 319-20, *writ denied*, 08-1402 (La. 9/26/08), 992 So.2d 993 (footnote omitted).

### *"Permissive User" and "Covered Auto"*

Mr. Allen asserts that the umbrella policy provides coverage to Mr. Brupbacher and the 1999 Suburban owned by the Chessons. In support of his contention, he argues that "[t]he primary Allstate policy provides coverage for Patrick Brupbacher (uncontested) and the 1999 G.M.C. Suburban (uncontested)."

Although Mr. Allen classifies Mr. Brupbacher as a "permissive user" and the 1999 Suburban as a "covered auto," these terms are expressly defined and relevant to coverage only under the primary policy which is not at issue. As noted above, coverage under the primary automobile liability policy was not contested by Allstate. Mr. Allen's argument that coverage exists under the umbrella policy on the grounds that Mr. Brupbacher is a "permissive user" and that the Suburban is a "covered auto" under the primary policy is erroneous. As discussed in detail below, coverage under a primary automobile liability policy does not equate to *ipso facto* coverage under an umbrella policy. The classifications of "permissive user" and "covered auto" under the primary policy are irrelevant to a determination of whether coverage exists under the Allstate umbrella policy for the alleged negligent actions of Mr. Brupacher while operating the 1999 Suburban.

The question of coverage under the umbrella policy is resolved by the express terms of the umbrella policy itself. On the interpretation of insurance contracts, our supreme court has stated as follows:

3

An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co.*, 93-0911 (La.1/14/94), 630 So.2d 759, 763; *Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993); *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So.2d 342, 345 (La.1991). If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. *Smith, supra* at 1379; *Central Louisiana Elec. Co., Inc. v. Westinghouse Elec. Corp.*, 579 So.2d 981, 985 (La.1991); *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La.1988); *see* La. C.C. art.2046. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Interstate, supra* at 763; *Fertitta v. Palmer*, 252 La. 336, 211 So.2d 282, 285 (1968). The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. *Westinghouse, supra* at 985; *Pareti, supra* at 420; *see* La. C.C. art.2050. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. *Interstate, supra* at 764; *Smith, supra* at 1379; *Pareti, supra* at 420; *see* La. C.C. art.2056.

*Hebert v. Webre*, 08-60, pp. 4-5 (La. 5/21/08), 982 So.2d 770, 773-74.

In this case, the umbrella policy sets forth, relative to coverage, that "**Allstate** will pay when an insured becomes legally obligated to pay for **personal injury, property damage** or **bodily injury** caused by an **occurrence**." These highlighted terms are expressly defined within the "**[d]efinitions**" section of the umbrella policy. Included therein is the definition of "**[i]nsured**" which includes "**you**" and "relatives residing in **your** household." The terms "**[y]ou**" or "**[y]our**" are defined to mean "the person named in the declarations." The declarations in the instant policy include the "**NAMED INSURED(S)[,]**" "Dr[.] Douglas Chesson" and "Willa C[.] Chesson."

Based upon these express policy provisions, for coverage to exist under the umbrella policy for the alleged negligent actions of Mr. Brupbacher, he must first meet the definition of "insured." Obviously, he is not one of the named insureds, Dr.

and Mrs. Chesson. Additionally, it is not disputed that Mr. Brupbacher, although a relative of the Chessons, was not residing in their household. As such, Mr. Brupbacher is not an "insured" under the umbrella policy. The umbrella policy provides coverage only to those individuals meeting the definition of "insured" which does not include every permissive user of a vehicle owned by the named insureds. These clear and explicit policy provisions must be enforced as written.

In support of his assertion that coverage exists under the umbrella policy for the subject accident, Mr. Allen also relies on the definition of an "**insured auto**," which the umbrella policy defines as "a motor vehicle for which this policy provides excess liability insurance for an insured person with respect to the accident." Mr. Allen then reasons that "[i]t is uncontested that this 1999 G.M.C. Suburban is a covered auto under the *primary policy*. Accordingly, the Chesson vehicle and its permissive user are insureds under this following form umbrella policy." (emphasis added). Taking the analysis a step further, Mr. Allen then concludes that, given the accident is within the ambit of coverage, "[i]t is Allstate's burden to prove that this following form umbrella policy excludes coverage for Patrick Brupbacher (an insured under the primary policy)."

Again, Mr. Allen's reliance on the *primary policy* is misplaced. The fact that the Suburban is a "covered auto" under the primary policy has no bearing on an analysis of coverage under the umbrella policy. Additionally, Mr. Allen asserts in his brief that "[t]here is no exclusion for coverage under the umbrella policy." As to this contention, it is Mr. Allen who bears the burden of proving the existence of coverage under the relevant policy. *Tunstall v. Stierwald*, 01-1765 (La. 2/26/02), 809 So.2d 916. It is only if Mr. Allen meets this burden that Allstate then bears the burden of

5

proving the application of an exclusion.

As noted by Allstate, "[i]n essence, [Mr.] Allen is arguing that [Mr.] Brupbacher is an 'omnibus insured' under the Compulsory Motor Vehicles Liability Security Law (La.R.S. 32:861)." However, we agree with Allstate that these statutory requirements are not applicable in the present case.

In keeping with the mandatory automobile liability coverage requirements, La.R.S. 32:900(B)(2) (emphasis added) requires a "Motor Vehicle Liability Policy" to include an omnibus clause which extends coverage to "insure the person named therein *and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured*[.]" However, a personal umbrella policy is not a "Motor Vehicle Liability Policy." Our supreme court distinguished such a policy, which is statutorily mandated to provide an omnibus clause, from an "automobile liability policy" reasoning as follows:

> The plaintiffs fail to discern the distinction between a "motor vehicle liability policy" and an "automobile liability policy." The term "motor vehicle liability policy" is defined by La.R.S. 32:900(A) as "an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued . . . by an insurance carrier duly authorized to transact business in this state. . . ." By purchasing a "motor vehicle liability policy" an owner or operator satisfies the requirements of the [Louisiana Motor Vehicle Safety Responsibility Law (LMVSRL)] . In contrast, an "automobile liability policy" is a voluntary policy which has not been certified as proof of a motorist's financial responsibility and does not therefore satisfy the requirements of the LMVSRL.
>
> [The] language of La.R.S. 32:900(B)(2) clearly indicates the mandatory omnibus clause requirement applies only when the liability policy in question is certified and used as proof of financial responsibility. *New Zealand Ins. Co. v. Holloway*, 123 F.Supp. 642 (W.D.La.1954); *Gotreaux v. Travelers Ins. Co.*, 299 So.2d 466 (La.App. 3rd Cir.), *writ denied*, 302 So.2d 309 (La.1974); *Johnson v. Universal Automobile Ins. Ass'n,* 124 So.2d 580 (La.App. 3rd Cir.1960). La.R.S. 32:900(B)(2) does not affect the terms of a voluntary "automobile liability policy" which was not obtained to comply with the

6

requirements of the LMVSRL.

*Hearty v. Harris,* 574 So.2d 1234, 1239 (La.1991) (footnotes omitted).

In this case, the umbrella policy is a voluntary "automobile liability policy," and, as such, omnibus insured coverage is not required to be included under the mandate of La.R.S. 32:900. To the contrary, "the insurer in an umbrella policy is not providing compulsory coverage[,] and the insurer has the right to express the limits of its liability. The insured is free to accept or reject those terms." *Walker v. State Farm Mut. Auto. Ins.*, 37,063, p. 11 (La.App. 2 Cir. 6/25/03), 850 So.2d 882, 889, *writs denied*, 03-2019, 03-2117 (La. 12/19/03), 861 So.2d 574, 575.

Therefore, even if Mr. Brupbacher was operating the Suburban with the express permission of the Chessons, coverage does not inure to his benefit as an omnibus insured. To so conclude would be to subvert the express policy definition of "insured" under the umbrella policy which is not statutorily mandated to extend coverage to an omnibus insured under the terms of the insurance contract.

We have also considered the case of *Lambert v. Lavigne*, 04-1961 (La.App. 1 Cir. 9/23/05), 923 So.2d 704, *writ denied*, 05-2283 (La. 3/10/06), 925 So.2d 515, which is discussed by both parties and which was cited by the trial court in support of its holding. Mr. Allen would have this court distinguish *Lambert*, noting that it involved uninsured/underinsured motorist (UM) coverage and did not discuss a covered auto nor a permissive user. Conversely, Allstate points out that its policy language is the identical policy language appearing in the umbrella policy considered in *Lambert*. Despite its application in the UM context, we find *Lambert* to be instructive.

In *Lambert*, the plaintiff was a guest passenger seeking UM coverage under a

7

primary automobile insurance policy and a personal umbrella policy issued to the host driver by Allstate. Lambert recovered UM benefits under the primary policy, having met that policy's definition of an insured. Additionally, despite not being an insured under the umbrella policy, Lambert sought to "extend UM coverage provided for in the umbrella policy to persons who are injured while occupying an automobile owned by the named insured." *Id.* at 706. Allstate filed a motion for summary judgment on the issue of UM coverage, contending that coverage was not available to Lambert. "Allstate asserted that Lambert was not an 'insured' under the umbrella policy, which define[d] insureds for the purpose of UM coverage to include only the named insured and any resident relative and their legal representative." *Id.* at 705.

According to the first circuit, the trial court "noted that each of the policies contained different definitions of an 'insured,' and while Lambert was an insured under the primary policy and collected the UM limits thereunder, Lambert did not meet the definition of an insured in the umbrella policy and could not recover under that policy." *Id.* at 706. The appellate court found that "[i]t [was] undisputed in this case that Lambert [did] not meet the personal umbrella policy's narrowly drawn definition of an 'insured' . . . which defines an insured to include [the named insured] and relatives residing in his household." The first circuit commented that "[a]lthough the result mandated by the policy language seems onerous, given the nature and purpose of an umbrella policy, *i.e.*, to afford an added layer of protection to consumers who obtain such policies, [it] must conclude the parties are bound by the policy language as written." *Id.* at 707. Thus, to the extent that the first circuit was applying the express definition of "insured" in a personal umbrella policy, the reasoning of *Lambert* is applicable to the case at bar. As with the plaintiff in

8

*Lambert*, we find that Brupbacher does not meet the definition of "insured" under the Allstate umbrella policy.

**"Mission Theory"**

Mr. Allen also asserts that "[t]he liabilities of Patrick Brupbacher are covered by the Allstate Umbrella Policy while he was on [a] mission for Dr. and Mrs. Chesson." In support of his contention that coverage exists under the umbrella policy, Mr. Allen argues that there are two different definitions of an "insured" in the policy. The first definition, as discussed above, is limited to the named insured and residents of the household. Mr. Allen asserts, however, that the umbrella policy contains a second and more expansive definition of "insured." Relying upon a "mission theory,"[3] Mr. Allen asserts that Mr. Brupacher was a "legal representative[]" of the Chessons, and thus, he is included in this second definition of "insured" within the umbrella policy. We disagree.

Notably, this second definition of "insured" is found in a "Louisiana Personal Umbrella Policy Amendatory Endorsement" and appears under the heading "Uninsured Motorists Insurance — Coverage SS." As such, this second policy definition of "insured" is wholly irrelevant to the claims asserted herein by Mr. Allen which do not invoke the UM provisions of the umbrella policy.

We note that a brief was filed with this court on behalf of Mrs. Chesson wherein she urges this court to affirm the finding of the trial court "that no fact[s] exist[] on which to hold Willa Chesson or Dr. Douglas Chesson guilty of negligent entrustment" and that no "fact[s] exist[] to establish vicarious liability on the part of

---

[3]Mr. Allen argues that "[Mr.] Brupbacher was paid by Mrs. Chesson to clean the gutters, was told by Mrs. Chesson to use her Suburban to pick up her ladder (that belonged to Dr. and Mrs. Chesson) for the job, and got in an accident while on this mission."

9

Willa Chesson[] on the theory of 'mission.'" However, both issues presented on appeal by Mr. Allen relate to coverage, *vel non*, under the umbrella policy. Therefore, the issue of a "mission theory" would only be relevant to a determination of coverage under the umbrella policy. The judgment of the trial court granting the Motion for Summary Judgment on behalf of Mrs. Chesson, holding that "Willa Chesson has no direct liability nor vicarious liability for the alleged acts of Patrick Brupbacher," is not before this court.

**DECREE**

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Allstate Insurance Company is affirmed. Costs of this appeal are assessed to Thomas Allen.

**AFFIRMED.**